UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:21-cv-07823-SB-PVC | Date: | 1/6/2022 |
|---|---|---|---|

| Title: | *Portia Mason et al. v. Aldea Design, Inc. et al.* |
|---|---|

| Present: The Honorable | STANLEY BLUMENFELD, JR., U.S. District Judge |
|---|---|

| Victor Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER GRANTING MOTION FOR DEFAULT JUDGMENT [Dkt. No. 15]

Before the Court is Plaintiff Portia Mason's Motion for Entry of Default Judgment as to Defendant Aldea Design, Inc. Motion, Dkt. No. 15. Defendant has not filed an opposition or otherwise appeared. The Court deems this matter appropriate for resolution without oral argument and vacates the hearing set for January 14, 2022. *See* Fed R. Civ. P. 78; L.R. 7-15. For the reasons set forth below, the Court **grants** Plaintiff's motion.

## I.   BACKGROUND

Plaintiff is a "visually impaired and legally blind" individual who "requires screen reading software to read website content using her computer." Complaint (Compl.) ¶ 1, Dkt. No. 1. Defendant owns furniture stores that offer "a highly curated hand-picked selection of stylish, eco-friendly nursery pieces, hip décor pieces, [and] fun toys for the family." *Id.* ¶ 5. Defendant also offers the https://aldea.home.com website to the public, where consumers can access goods

sold by Defendants as well as "information regarding Defendant's store locations, gift[] cards, . . . [and] contact details." *Id.* ¶ 23.

Plaintiff alleges that she has "encountered multiple access barriers" when "attempt[ing] to do business with Defendant on Defendant's website." Compl. ¶¶ 26, 28. Such access barriers include, but are not limited to: (1) lack of alternative text; (2) empty links that contain no text; (3) redundant links; and (4) linked images missing alternative text. *Id.* ¶ 27. Plaintiff claims these access barriers "have denied Plaintiff full and equal access to Defendant's website" as well as the "full and equal enjoyment of goods and services offered in Defendant's stores and from making purchases at such physical locations." *Id.* ¶ 29. Plaintiff also alleges she "was unable to find the locations and hours of operation of Defendant's stores on its website, preventing [her] from visiting the locations to view and purchase products." *Id.* ¶ 31. Plaintiff "intend[s] to visit the Defendant's locations in the near future" if she could properly access the website. *Id.*

On September 30, 2021, Plaintiff filed suit against Defendant, alleging that the lack of screen reading software on Defendant's website violated both Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et. seq.*, and California's Unruh Civil Rights Act (Unruh Act), Cal. Civ. Code § 51.[1]

---

[1] Plaintiff labeled her complaint a "Class Action Complaint" and purported to bring her claims both "individually and on behalf of all other similarly situated" while seeking statutory minimum damages "of $4,000 per offense per person" in the putative class. Compl. at 1, 22. Plaintiff's motion appears to seek relief only for herself, but Plaintiff's counsel are still listed as "[a]ttorneys for Plaintiff and Proposed Class," and the motion argues that the lack of screen reading software "prevented Plaintiff and the Class Members from fully accessing the website." *Id.* at 1, 8. As Judge Birotte recently explained in *Rosales v. Indivest, Inc.*—a case where the plaintiff was represented by the same lead attorney (Mr. Coelho) at the same law firm (Wilshire Law Firm) as in the instant case—"Plaintiff fails to cite to any case law in support of granting a default judgment on a class-wide basis prior to undergoing the rigorous Rule 23 analysis. As such, to the extent Plaintiff argues the *Eitel* factors weigh in favor of default judgment on a class-wide basis, the Court deems these arguments unpersuasive, and will only address Plaintiff's individual arguments." No. 2:21-CV-02195-AB (PCVx), 2021 WL 5000694, at *3 (C.D. Cal. Sept. 16, 2021).

## II.    LEGAL STANDARD

Before a court may rule on an application for default judgment, it must first determine whether the application complies with Federal Rule of Civil Procedure 55 and Local Rule 55-1.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  The application must set forth:  (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act (50 U.S.C. § 3931) does not apply; and (5) that notice of the application has been served on the defaulting party (if required).  *Id.*

Once these procedural requirements are met, "[g]ranting or denying a motion for default judgment is a matter within the court's discretion."  *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010).  The Ninth Circuit has identified seven factors courts may consider when exercising this discretion:  "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

"[I]n defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaints."  *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); Fed. R. Civ. P. 8(b)(6).  A court, however, must still consider whether the complaint contains the required factual support and asserts legally sufficient claims.  *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1272 (N.D. Cal. 2004) ("[Although] the factual allegations of [the complaint] together with other competent evidence submitted by the moving party are normally taken as true . . . this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief.").

### III.  ANALYSIS

#### A.  Procedural Requirements

Plaintiff's Motion satisfies the procedural requirements for default judgment. Defendant was served with the Complaint and Summons. Dkt. No. 10. Because Defendant did not appear or answer the Complaint, the Clerk entered default against Defendant. Dkt. No. 13. Plaintiff's moving papers contain the information required by both the Local Rules and the Federal Rules of Civil Procedure; Defendant is not an incompetent person or minor and is not exempted under the Servicemembers Civil Relief Act; and notice of the Motion was served on Defendant. *See* Declaration of Thiago M. Coelho (Coelho Decl.) ¶¶ 2, 5, Dkt. No. 15-1.

#### B.  Application of *Eitel* Factors

The *Eitel* factors also weigh in favor of granting default judgment. First, Plaintiff would be prejudiced if default judgment is not entered because she will be without recourse against Defendant due to Defendant's absence in this action. Additionally, in satisfaction of the last four factors: (4) the sum of money sought by Plaintiff is less than $10,000 and is composed only of the statutory minimum amount of damages under the Unruh Act and attorneys' fees and costs; (5) Defendant has made no attempt to defend this case and there are no material facts in dispute; (6) there is no basis to believe that Defendant's default results from excusable neglect; and (7) Defendant's failure to appear or respond makes deciding the case on the merits impractical.

The second and third *Eitel* factors, which turn on the merits of Plaintiff's substantive claims and the legal sufficiency of the operative complaint, merit further analysis. *See Eitel*, 782 F.2d at 1471-72. Courts typically evaluate these factors together, looking to whether the plaintiff has "state[d] a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. "[C]ourts often treat these as the [two] most important [*Eitel*] factors." *Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12-4358 MMM (PLAx), 2013 WL 10155707, at *10 (C.D. Cal. May 14, 2013).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III

discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 730 (9th Cir. 2007).

"On their own, websites are not places of public accommodation" under the ADA. *Langer v. Pep Boys Manny Moe & Jack of Cal*., No. 20-cv-06015-DMR, 2021 WL 148237, at * 5 (N.D. Cal. Jan. 15, 2021) (citing *Weyer v. Twentieth Century Fox Film Corp*., 198 F.3d 1104, 1114 (9th Cir. 2000) (holding that the ADA covers "actual, physical places where goods or services are open to the public, and places where the public gets those goods or services")). But "[t]he requirement that a place of public accommodation refer to a physical place . . . does not preclude a plaintiff from challenging a business' online offerings," *Reed v. CVS Pharmacy, Inc*., No. 17-CV-3877-MWF (SKx), 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017), and "the ADA mandates that places of public accommodation . . . provide auxiliary aids and services to make visual materials available to individuals who are blind," *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 904 (9th Cir. 2019). Thus, the Ninth Circuit held in *Robles* that websites are covered by the ADA as long as there is a "nexus" between the website and the physical location. 913 F.3d at 905. The requisite nexus exists when the challenged website "facilitate[s] access to" or otherwise "connect[s] customers to the goods and services of" a place of public accommodation. *Id.* at 905-06.

Here, Plaintiff has sufficiently alleged a violation of Title III of the ADA. Plaintiff has pleaded that she is disabled because she is legally blind, Compl. ¶ 1, and that she was denied public accommodations by the lack of screen-reading software and other accessibility barriers present on Defendant's website, *id.* ¶¶ 27-29. Plaintiff has also sufficiently alleged the "public accommodation" element of an ADA claim by pleading that the access barriers on Defendant's website rendered her "unable to find the locations and hours of operation of Defendant's stores . . . , preventing [her] from visiting the locations to view and purchase products and/or services." *Id.* ¶ 31. This is sufficient to establish the requisite nexus between Defendant's website and its physical locations. *See, e.g.*, *Robles*, 913 F.3d at 905 (finding a nexus between the defendant's website and physical restaurants where "[c]ustomers use the website . . . to locate a nearby Domino's restaurant and order pizzas for at-home delivery or in-store pickup"); *see also Haggar v. Ashley Furniture Indus., Inc*., No. LA CV 19-01266-PA (Jcx), 2019 WL 8886026, at *3 (C.D. Cal. Dec. 12, 2019) (alleging that the plaintiffs tried to use the defendant's website "to locate physical stores, and order furniture and other

products available at [d]efendant's physical locations" was sufficient to show nexus); *Farr v. Hobby Lobby Stores, Inc.*, No. CV 19-5949-DMG (ASx), 2020 WL 3978078, at *3 (C.D. Cal. Apr. 29, 2020) (denying motion to dismiss where the plaintiff alleged that the defendant's web-based barriers rendered him "unable to locate information about store locations and hours").

Plaintiff has satisfactorily pleaded a violation of the ADA. Plaintiff has also stated a claim under the Unruh Act because "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act." *Molski*, 481 F.3d at 731; *see also* Cal. Civ. Code § 51(f). Because Plaintiff has pleaded meritorious claims for violations of the only two causes of action in her complaint, the second and third *Eitel* factors favor default judgment.

In sum, the *Eitel* factors weigh in favor of granting default judgment.

## C.   Relief Sought

Plaintiff seeks three forms of relief: statutory damages, an injunction directing Defendant to comply with the ADA and the Unruh Act, and attorneys' fees and costs. Motion at 12-14. The Court addresses them each in turn.

Plaintiff seeks an award of $4,000 under the Unruh Act. Motion at 13. A violation of the Unruh Act provides for the recovery of "in no case less than four thousand dollars." Cal. Civ. Code § 52(a). Thus, Plaintiff's request for the statutory minimum damages for a violation of the Unruh Act is reasonable, and the Court awards $4,000 in damages.

Plaintiff also seeks a permanent injunction "requiring Defendant to conform its website to comply with Web Content Accessibility Guidelines ('WCAG')."[2] Motion at 12. Specifically, Plaintiff asks the Court to order Defendant to: (1) modify the website to achieve substantial conformance with WCAG 2.1 within 24 months of the entry of judgment in this case; and (2) adopt and implement a "website accessibility policy" within 180 days of entry of judgment whereby "any changes or additions to the [w]ebsite will substantially conform with WCAG 2.1." *Id.* at 12-13. The Ninth Circuit confirmed in *Robles* that "district court[s] can order compliance with WCAG 2.0 as an equitable remedy." 913 F.3d at 907.

---

[2] WCAG "are private industry standards for website accessibility developed by technology and accessibility experts" that "have been widely adopted, including by federal agencies." *Robles*, 913 F.3d at 902 n.1.

District courts have since issued injunctions ordering defendants to conform their websites with WCAG 2.1, the latest version of the guidelines.  *See, e.g.*, *Payan v. L.A. Comm. Coll. Dist.*, No. 2:17-cv-01697-SVW-SK, 2020 WL 5289845, at *2 (C.D. Cal. May 29, 2020).  Accordingly, the injunctive relief sought by Plaintiff is appropriate.

Plaintiff next seeks $4,000 in attorneys' fees.  Coelho Decl. ¶ 6.  A prevailing plaintiff is entitled to an award of reasonable attorneys' fees under Title III of the ADA, *see* 42 U.S.C. § 12205, and the Unruh Act, *see* Cal. Civ. Code § 52(a).

The Ninth Circuit recently described the procedure that courts in the Central District of California must follow when determining an attorney's fee award for statutory damages when a party defaults:

> If a party seeks a fee "in excess of" the schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a "reasonable" fee.  That process does not describe a "modification" of the schedule of fees.  Rather, it prescribes an alternative process when a party invokes it in the proper way at the proper time.  When a party invokes that process, the court is obliged to calculate a "reasonable" fee in the usual manner, without using the fee schedule as a starting point.

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1159 (9th Cir. 2018).  In *Vogel*, the court held that "the district court misinterpreted Local Rule 55-3 and abused its discretion . . . [b]y treating the fee schedule as presumptively reasonable, rather than using the lodestar approach to calculate a presumptively reasonable fee" and awarding $600 in attorneys' fees, which was a fraction of the requested amount for the achievement of "excellent results."  *Id.* at 1161.  The Ninth Circuit emphasized that "[i]n a case in which a defendant fails to appear or otherwise defend itself . . . the burden of scrutinizing an attorney's fee request—like other burdens— necessarily shifts to the court."  *Id.* at 1160.

But *Vogel* cautions that courts must "strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel . . . [and] [t]he way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less."  *Id.* at 1158 (internal quotation marks omitted) (quoting *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008)).  To avoid a windfall in this case, the Court

applies the lodestar approach "by determining how many hours were reasonably expended on the litigation, and then multiply[ing] those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno*, 534 F.3d at 1111. While the Court is required to explain its rationale, if the difference between the requested fees and the court's award is relatively small, "a somewhat cursory explanation will suffice." *Id.*

Here, Plaintiff's counsel, Thiago Coelho, states that he expended eight hours of work on Plaintiff's case at a rate of $500 per hour. Coelho Decl. ¶ 6. The requested rate appears consistent with hourly rates that have been approved for attorneys with similar qualifications in ADA cases. *See, e.g., Kwon v. Sung-Eun Corp.*, No. SACV 20-01834-CJC (KESx), 2021 WL 3193225, at *4 (C.D. Cal. Feb. 9, 2021). On this unopposed record, the Court will credit the $500 hourly rate for Mr. Coelho's services as reasonable.

The Court does not find, however, that Mr. Coelho's expenditure of eight hours of time on Plaintiff's case was reasonable. Mr. Coelho identifies six tasks he completed to prepare Plaintiff's case but fails to identify how much time was spent on each task. Reasonable hours expended on a case are hours that are not "excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009). Because counsel's declaration "does not provide a detailed breakdown of the time spent on each task in this case," the Court is unable to fully determine whether the time spent by Mr. Coelho on this case was reasonable. *Kwon*, 2021 WL 3193225 at *4. Moreover, billing eight hours in this case appears "unreasonable given the boilerplate nature of the [c]omplaint and motion for default judgment as well as the fact that there was no opposition." *Id.* All Mr. Coelho did in this case was modify a form complaint, respond to an order to show cause why this action should not be dismissed for lack of prosecution, ask the Clerk to enter default, and move for default judgment. This Court agrees with the conclusion reached by the court in *Kwon* that it should have taken counsel of Mr. Coelho's experience "no more than four hours to perform these [exact] tasks." *Id.* As such, the Court will adopt the approach in *Kwon* and impose a 50% reduction on time spent. After this reduction, Mr. Coelho is left with four hours at a rate of $500, for a total award of $2,000 in attorneys' fees.

Finally, Plaintiff seeks to recover $440 in costs. Coelho Decl. ¶ 6. The Court finds this request to be reasonable and awards Plaintiff $440 in costs.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Plaintiff's motion.  Judgment shall be separately entered as follows:

- Defendant is **ORDERED** to:  (1) modify its website to achieve substantial conformance with WCAG 2.1 within 24 months of the entry of judgment in this case; and (2) adopt and implement a website accessibility policy within 180 days of entry of judgment whereby any changes or additions to the website will substantially conform with WCAG 2.1.

- Plaintiff is **AWARDED** $4,000 in statutory damages;

- Plaintiff is **AWARDED** $2,440 in attorneys' fees and costs; and

- Plaintiff is **ORDERED** to mail a copy of this order and the judgment concurrently filed therewith to Defendant.  Plaintiff shall file Proof of Service by **January 20, 2022.**

**IT IS SO ORDERED.**